HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID ARTHUR MORALES,

               Plaintiff,

  v.

CITY OF BELLINGHAM, *et al.*,

               Defendants.

No. 2:19-cv-02078-RAJ

ORDER GRANTING SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. # 16. Plaintiff opposes this motion. Dkt. # 31. For the reasons below, the Court **GRANTS** Defendants' motion.

## II. BACKGROUND

On January 4, 2017, Plaintiff David Arthur Morales ("Plaintiff") was riding his bicycle in the bicycle lane of N. State Street in Bellingham, Washington. Dkt. # 1 ¶ 4.1. Heidi Sande ("Defendant Sande"), a parking enforcement officer for the City of Bellingham, had stopped her parking enforcement vehicle on N. State Street, blocking the

ORDER – 1

bike lane and allegedly forcing Plaintiff to enter general traffic. *Id.* ¶¶ 4.1-4.4. Plaintiff claims that he stopped to ask Defendant Sande to stop blocking the bicycle lane and putting bicyclists at risk. *Id.* ¶ 4.5. Defendant Sande alleges that she tried to allow Plaintiff to pass her, but Plaintiff did a "track stand," or stood up on his pedals so close behind her vehicle that she thought he may collide with her vehicle. Dkt. # 16 at 3. Defendant believed that Plaintiff intended to intimidate her with his track stand. *Id.* Plaintiff does not dispute this allegation. Both parties recognized each other from previous incidents in which Plaintiff confronted Defendant Sande while she was on-duty. *Id.*; Dkt. # 25 at 2.

Plaintiff then rode around to the driver's window, "rapped" on it, and gestured to Defendant Sande to roll down her window so they could talk. Dkt. # 1 ¶ 4.6. Defendant Sande refused. *Id.* Defendant Sande alleges that Plaintiff proceeded to call her a "bitch" and yell at her, saying that her life or job is worthless and that she should not be in the bike lane. Dkt. # 16 at 3; Dkt. # 24 at 4. Defendant Sande claims she grabbed the door handle because she feared Plaintiff might try to open the door. Dkt. # 16 at 4. Plaintiff does not dispute these allegations. He alleges that, after their interaction, he "threw his hands up in frustration and threaded his bike between the parking enforcement vehicle and a parked car and rode away." Dkt. # 1 ¶ 4.6.

According to Defendant Sande, she then used her radio to call for help from a police officer. Dkt. # 16 at 4. Bellingham Police Officers Josh Danke ("Defendant Danke") and Kyle Nelson ("Defendant Nelson") responded to Defendant Sande's call and drove to her location. *Id.* Upon arrival, they observed that she "was upset and crying." *Id.* at 5. She explained to the officers that she had been confronted by the Plaintiff on prior occasions and felt that he was trying to intimidate her from doing her job by doing track stands very close to her vehicle, rapping on her window, yelling at her not to park in the bike lane, calling her a "bitch," and telling her that her life was worthless. *Id.* Defendant Sande told Defendant Danke that she "was afraid that

ORDER – 2

[Plaintiff] would punch her if she got out of her vehicle." Dkt. # 17 ¶ 9.

Defendants Danke and Nelson searched the area for the Plaintiff but could not find him. Dkt. # 16 at 5. They later reviewed video footage which captured the incident and found it to be consistent with Defendant Sande's account. *Id.* Defendant Danke then reviewed relevant state criminal statutes and consulted with Defendant Nelson about potential criminal charges. *Id.*

The next day, Defendant Danke contacted the Chief Criminal Deputy Prosecutor in Whatcom County Prosecutor's Office to discuss potential charges and probable cause. *Id.* Based on the facts relayed by Defendant Danke, the deputy prosecutor told him that he believed there was probable cause for the Plaintiff's arrest for intimidating a public servant under RCW 9A.76.180 and that the Whatcom County Prosecutor's Office "would support and pursue said charges against the Plaintiff." *Id.* at 5-6.

The following day, on Friday, January 6, 2017, Defendants Danke and Nelson returned to the location of the incident in search of Plaintiff around the same time of the incident. *Id.* at 6. Defendant Sande was also at the scene in her parking enforcement vehicle. *Id.* When Plaintiff rode by, Defendant Danke pulled him over to the side of the street. Dkt. # 17 ¶ 17. When he asked Plaintiff if he knew why he was pulled over, Plaintiff indicated that it might be related to the incident with the parking officer. *Id.* ¶ 19. Plaintiff conveyed his concern with how parking enforcement officers park their vehicles in the bicycle lane when performing their duties. *Id.* He told Defendant Danke that he had been "angry during the incident and became even more angry when [Defendant] Sande would not talk to him." *Id.* ¶ 20. According to Defendant Danke, Plaintiff admitted that Defendant Sande likely did not want to talk to him because she was scared and noted that he had a prior encounter with Defendant Sande. *Id.* Plaintiff admitted that the way he handled the situation was "inappropriate." *Id.* Plaintiff does not dispute this account of his conversation with Defendant Danke. Plaintiff was subsequently arrested by Defendant Danke and Officer Nelson. Dkt. #1 ¶ 4.7.

ORDER – 3

Plaintiff alleges that he was arrested at approximately 1:15 p.m. but that Defendant Danke drove him around Bellingham for an hour before he was booked in Whatcom County jail. *Id.* Defendants dispute this claim and note that Defendants Danke and Nelson first contacted Plaintiff at 1:12 p.m. Dkt. # 17 ¶ 17. After Plaintiff was arrested, the officers drove directly to the Bellingham Police Department, which took about six minutes. Dkt. # 16 at 7. Defendant Danke went inside the police department to retrieve the probable cause statement, which he needed to book the Plaintiff into the Whatcom County Jail. *Id.* Upon returning to the car, he stopped to have a conversation with an individual in the parking lot for 36 seconds. *Id.* Defendant Danke then returned to the car and drove Plaintiff two blocks to the Whatcom County jail. *Id.* Plaintiff was booked into jail at 1:49 p.m. *Id.* Plaintiff alleges that because he arrived after the 3:00 p.m. calendar on Friday, he had to spend two days in Whatcom County jail before appearing before a judge. Dkt. # 1 ¶¶ 4.11, 4.13.

On January 8, 2017, the Whatcom County Superior Court found probable cause for Plaintiff's arrest, Dkt. # 26 at 22, and he was released on bail, Dkt. # 1 ¶ 4.13. On April 14, 2017, the charges against Plaintiff were dismissed without prejudice. *Id.* ¶ 4.14.

On December 23, 2019, Plaintiff filed this lawsuit alleging unlawful arrest and incarceration against Defendants City of Bellingham, a municipal corporation; Defendant Sande, her spouse and marital community; Defendant Danke, his spouse, and marital community; Defendant Nelson, his spouse and marital community; and Bellingham police officers Jeffery Yoder and Eric Kingery, as well as their respective spouses and marital communities (collectively "Defendants"). *Id.* ¶¶ 3.1-3.7. On August 13, 2020, Defendants filed this motion for summary judgment. Dkt. # 16.

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

ORDER – 4

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the nonmoving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). The court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (explaining that the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis original).

ORDER – 5

## IV. DISCUSSION

Plaintiff here asserts three causes of action related to his alleged unlawful arrest and incarceration. In his first cause of action, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment right to be free from unreasonable seizure: Plaintiff alleges that Defendants did not have probable cause to arrest him nor statutory authority to make a warrantless misdemeanor arrest pursuant to RCW 10.31.100. Dkt. # 1 ¶¶ 5.2-5.4. In his second cause of action, Plaintiff claims that the City of Bellingham, with deliberate indifference, failed to take necessary, proper, or adequate measures in order to prevent the violation of his rights. *Id.* at ¶ 6.3. Specifically, Plaintiff alleges that the City of Bellingham "breached its duty of care to Plaintiff by failing to adequately train or supervise its police officers, particularly [Defendants]." *Id.* ¶ 6.5. In his third cause of action, Plaintiff contends that Defendants breached a duty of care by negligently arresting and imprisoning him without a warrant, probable cause, or statutory authority. *Id.* ¶ 7.2.

Each cause of action requires a finding that Plaintiff was arrested by officers without statutory authority or without probable cause. As an initial matter, the Court finds Plaintiff's allegation that Defendants did not have statutory authority to make a warrantless misdemeanor arrest pursuant to RCW 10.31.100 to be meritless. Dkt. # 1 ¶¶ 5.2-5.4. Because Plaintiff was charged with a class B felony under RCW 9A.76.180, not a misdemeanor, this statute is inapplicable. The Court will therefore focus its analysis on whether there was probable cause to arrest Plaintiff.

Under the Fourth Amendment, a warrantless arrest requires probable cause. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause "requires a showing that the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed." *State v. Barron*, 285 P.3d 231, 235 (Wash. Ct. App. 2012). "Probable cause boils down, in

ORDER – 6

criminal situations, to a simple determination of whether the relevant official, police or judicial, could reasonably believe that the person to be arrested has committed the crime." *State v. Neeley*, 52 P.3d 539, 543 (Wash. Ct. App. 2002) (internal citation and quotations omitted). Such a determination relies on the totality of facts and circumstances known by the officer at the time of the arrest. *Id.* It is "grounded on a practical, nontechnical" review of the facts. *Id.* "Probable cause does not require the officer to have evidence sufficient to establish guilt beyond a reasonable doubt." *Id.* Finally, when an officer "has received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth, he has probable cause." *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (internal citation and quotations omitted).

Defendant Danke arrested Plaintiff for intimidating a public servant pursuant to RCW 9A.76.180. Under the statute, "a person is guilty of intimidating a public servant if, by use of a threat, he or she attempts to influence a public servant's . . . official action as a public servant." A threat is defined, in part, as a direct or indirect communication of an intent to cause bodily injury in the future to the person threatened or to cause physical damage to the property of a person. RCW 9A.04.110(28)(a-b).

As discussed earlier, Defendant Sande reported this incident to Defendant Danke and told him that she felt intimidated by Plaintiff's actions when he pounded on the window of her vehicle, yelled at her for parking in the bike lane, shouted insults, and did a track stand very close to her vehicle. She felt that Plaintiff was trying to prevent her from doing her job and was concerned about physical injury. Defendants Danke and Nelson observed that Defendant Sande was "visibly shaken and had tears in her eyes." Dkt. # 17 ¶ 6. After conducting research on possible charges, Defendant Danke consulted with a deputy prosecutor who stated his belief that there was probable cause for the Plaintiff's arrest for intimidating a public servant under RCW 9A.76.180. The prosecutor indicated that he would pursue charges against Plaintiff. When Defendant

ORDER – 7

Danke contacted Plaintiff the following day, Plaintiff confirmed that he was concerned with how parking enforcement officers park their vehicles in the bicycle lane when performing their duties. *Id.* at 5.  He told Defendant Danke that he had been angry during the incident and became even more angry when [Defendant] Sande would not talk to him. *Id.*  Plaintiff also acknowledged that he had a prior incident with Defendant Sande. *Id.* at 12.

Based on these undisputed facts, the Court concludes that Defendant Danke had probable cause to arrest Plaintiff.  Defendant Danke's belief that, under RCW 9A.76.180, Plaintiff was intimidating Defendant Sande by use of a threat was reasonable.  Defendant Sande told Defendant Danke that Plaintiff pounded on her car window, yelled insults at her, and did track stands very close to her car.  She told Defendant Danke that, as a result, she felt intimidated, fearful that Plaintiff would collide with her vehicle or punch her if she got out of her car.  Defendant Danke's belief that Plaintiff was trying to influence Defendant Sande's official action as a public servant was also reasonable.  Plaintiff said as much to Defendant Danke when he explained that he was trying to influence her to stop parking in the bike line.

The sources of information were also reasonably trustworthy to establish probable cause.  First, Defendant Sande, the putative victim "who it seems reasonable to believe is telling the truth," 797 F.2d at 439, provided information that Plaintiff may have committed an offense.  Second, Plaintiff reaffirmed relevant details of Defendant Sande's account, including his anger, frustration, and "inappropriate" conduct aimed at influencing Defendant Sande's actions as a public servant, which he acknowledges may have left her "scared."  Because the Court concludes, as a matter of law, that Plaintiff's arrest was supported by probable cause, his Fourth Amendment claims fail.  Indeed, "probable cause is a complete defense to an action for false arrest and imprisonment. *Hanson v. City of Snohomish*, 852 P.2d 295, 301 (Wash. 1993).

The Court's conclusion that probable cause existed to arrest Plaintiff defeats

ORDER – 8

Plaintiff's claims against other named Defendants. Plaintiff alleges that "the other Defendants facilitated a scheme to 'educate' the Plaintiff" but fails to provide any facts supporting this contention. Dkt. # 35 at 8. The Court finds as a matter of law that Bellingham Police Officers Kyle Nelson, Jeffery Yoder, Eric Kingery, and Parking Enforcement Officer Sande did not violate Plaintiff's Fourth Amendment rights for two reasons. First, there is no evidence that these Defendants participated in Plaintiff's arrest. Second, even if the named police officers had participated in his arrest, the Court has already found that Plaintiff's arrest was not unconstitutional. Finally, Plaintiff's unsubstantiated allegation that Defendant Sande "chased" Plaintiff for nine blocks does not constitute a material fact necessary to the determination of whether probable cause existed. Dkt. # 35 at 5. Defendant Sande is a parking enforcement officer—not a police officer—with no authority to arrest a citizen. Aside from being unsupported, this allegation is irrelevant to a finding of whether the police officers who arrested Plaintiff had probable cause to do so.

Consequently, Plaintiff's second and third cause of action similarly fail. Plaintiff alleges that the City of Bellingham "failed to take necessary, proper or adequate measures in order to prevent the violation of Plaintiff's rights and the injury to the Plaintiff." Dkt. # 1 ¶ 6.3. Plaintiff claims that the "need to train officers on the constitutional limits for the seizure of persons is so obvious that failure to do so shows 'deliberate indifference' to Plaintiff's constitutional rights." *Id.* ¶ 6.4. Having determined that Plaintiff's constitutional rights were not violated as a matter of law, the Court finds no basis to conclude that the City of Bellingham has exhibited "deliberate indifference" to his constitutional rights or has failed to take necessary steps to prevent violations thereof. For the same reasons, the Court finds that Plaintiff's third cause of action alleging that Defendants negligently arrested and incarcerated Plaintiff without a warrant, probable cause, or statutory authority is baseless.

Plaintiff makes numerous allegations in his response to summary judgment that

ORDER – 9

are conclusory, unsupported by facts, and, most importantly, irrelevant to the issue of whether there was probable cause to arrest Plaintiff.  For example, Plaintiff claims that whether "any reasonable person [would] arrest a citizen who attempts to express a safety concern" and whether a "felony arrest is reasonable if the person attempts to get the officer's attention by tapping on her window" are questions for a jury.  Dkt. # 35 at 6.  However, Plaintiff was not arrested for expressing a safety concern or for tapping on a window.  Plaintiff was arrested because of his uncontested actions detailed above, which are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.  These questions are therefore irrelevant and do not present a genuine issue of material fact for a jury to consider.  Similarly, Plaintiff's allegation that Defendants "facilitated [a] scheme to 'educate' the Plaintiff" is simply without any factual support in the record and does not present a genuine issue for a jury to resolve.  Based on the admissions made by Plaintiff, there are no material facts in dispute.  Given the undisputed facts above, the Court declines to further address irrelevant conclusory allegations and GRANTS Defendants' motion for summary judgment.

## V.   CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment and dismisses Plaintiff's claims with prejudice.  Dkt. # 16.

DATED this 29th day of December, 2020.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 10